UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE ABBOTT, <br>     Plaintiff, <br>   v. <br> E. TOOTELL, et al., <br>     Defendants. | Case No. 17-cv-04004-SI <br><br> **ORDER OF SERVICE** <br> Re: Dkt. No. 1 |

Joe Abbott, an inmate on death row at San Quentin State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about conditions of confinement at the prison. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

The complaint alleges the following:

Joe Abbott hurt his left Achilles tendon on August 4, 2012 while in the exercise yard at San Quentin. He thought it was a ruptured Achilles tendon, but Dr. Garrigan and Dr. Leighton disagreed and diagnosed it as a strain of his Achilles tendon over the next few months. They refused to order an MRI for him, but did order ice for him on several occasions. Dr. Tootell approved another doctor's decision to change a recommendation for three weeks' of ice to three days of ice on September 10, 2012. On September 10, 2012, orthopedist Dr. Lyons had an x-ray done and determined it was a partial tear of the Achilles tendon and ordered an MRI. An MRI was done on October 10, 2012, and revealed a ruptured Achilles tendon. Dr. Lyons recommended surgical repair. The surgery was done on November 9, 2012.

After the surgery, a portion of the surgical wound was very slow to heal. Dr. Garrigan ordered supplies for the wound on December 6, 2012, when she noticed the three centimeter area over the Achilles tendon that had not healed. Dr. Lyons also treated the wound and recommended that Abbott be sent to the Kentfield Wound Center. Over the next several months, Abbott was seen at the wound center several times, and was given directions in care for his wound and directions for specific supplies to use for that care. Drs. Garrigan, Leighton and Tootell failed to follow the orders from the wound center, and failed to obtain the necessary supplies for proper wound care. Their failures caused a delay in the healing of the wound and resulting pain. It was not until July 12, 2013, about eight months after surgery, that the Kentfield Wound Center finally declared that the wound was fully healed.

When the Kentfield Wound Center declared the wound healed, someone at the center told Abbott that the wound would reopen if he did not have compression on it at all times. Abbott was given a prescription for a compression stocking. Back at the prison, Dr. Leighton wrote an order for the stocking. Dr. Tootell was responsible for ordering or obtaining the stocking but did not do so. Defendants initially told Abbott he could not order the compression stocking but later allowed him to do so; his family purchased the stocking and he received it on September 19, 2013.

Abbott also had problems with his left knee, which had been bothering him since before he hurt his left Achilles tendon. An MRI of the left knee was done on June 25, 2014. Afterwards, a "tech" in the MRI center told Abbott that he saw one or two tears. Docket No. 1 at 19. On July 24, 2014, Dr. Lyons told him the menisci were okay; Abbott disagreed because of the pain he felt. On September 15, 2014, Dr. Garrigan used the "same fraudulent MRI report" to tell Abbott nothing was wrong with him. *Id.* She denied Abbott's request for a second opinion. Over the next several months, Abbott's knee got worse. On January 22, 2015, orthopedist Dr. Lyons decided to do an arthroscopic debridement and lateral release, and Dr. Garrigan signed off on the request for services. The surgery was done on April 3, 2015, and it was determined that Abbott had, among other things, degenerative arthritis of the knee and a meniscal tear. Abbott contends that defendants intentionally provided him with a fraudulent MRI report on June 25, 2014, to prevent him from obtaining corrective surgery, leading to the 10-month delay in obtaining surgery.

2

Abbott further contends that Dr. Leighton and Dr. Tootell were deliberately indifferent to his medical needs because they tapered his morphine and did not provide other suitable medications for him in 2015-2016. Abbott's pain has been so severe since the discontinuation of the morphine that he "goes man down at least three to four times" in the following months. *Id.* at 26. On those occasions, he was taken to the clinic, given ice, and medication would be ordered that he contends was ineffective and "tore up his stomach." *Id.*

In February 2016, Dr. Leighton submitted a non-formulary request to Dr. Tootell for Abbott to take Citrucel to address his constipation from the NSAIDs he was taking. Dr. Tootell denied it, stating that he could buy the product in his quarterly package. Abbott contends this was retaliatory because it was done the day after the Ninth Circuit had issued its mandate in another case Abbott had filed.

Abbott contends that several of defendants' decisions were retaliatory for litigation he was pursuing. He filed a motion for temporary restraining order and preliminary injunction in March 2013. Docket No. 1 at 14. And he filed a grievance on April 19, 2013, after correctional officers would not wait for him when he wanted 15 minutes to wash up before going to a medical appointment. *Id.* at 15. At an April 25, 2013 appointment, Dr. Garrigan seemed "peeved" at him about his missed appointment, stating that "It's not right for you to sue us for improper medical care; then you refuse treatment, when we're trying to take care of you." *Id.* He does not allege that Dr. Garrigan did anything medically wrong at this appointment. Before this, Abbott had never mentioned anything about civil litigation to Dr. Garrigan, although Dr. Tootell and others were preparing for their first motion for summary judgment. *Id* at 16. In May 2013, Dr. Tootell (and persons other than Dr. Leighton and Dr. Garrigan) filed a motion for summary judgment, which was granted in part and denied in part on February 25, 2014. *Id.* at 21. Dr. Tootell filed an interlocutory appeal challenging the district court's decision that she was not entitled to qualified immunity. On January 27, 2016, the Ninth Circuit affirmed, and issued its mandate on February 22, 2016. *Id.* He filed a grievance against Dr. Leighton after a November 20, 2015 appointment at which she informed him his morphine would be discontinued. *Id.* at 25. After this, she gave him a medication that would require a blood draw, which was unwelcome because Abbott was

3

needle-phobic. She also scheduled his next appointment in four months rather than 30 days. *Id.* Defendant Tootell denied a request for the nonformulary Citrucel in retaliation the day after the Ninth Circuit issued its mandate in the case he had against her. *Id* at 26.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eighth Amendment's Cruel and Unusual Punishments Clause requires that prison officials provide for the health and safety of prisoners. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104. Liberally construed, the *pro se* complaint states cognizable § 1983 claims against Dr. Garrigan, Dr. Leighton and Dr. Tootell for deliberate indifference to Abbott's serious medical needs. These defendants allegedly caused a multi-month delay in Abbott receiving needed surgery for his Achilles tendon, failed to obtain the supplies needed for his slow-healing wound, caused a lengthy delay in him obtaining surgery for his knee problems, and provided inadequate pain management.

4

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Liberally construed, the *pro se* complaint states a cognizable § 1983 claim against Dr. Leighton and Dr. Tootell for retaliation against Abbott for his First Amendment activities. A retaliation claim is not stated against Dr. Garrigan based on her negative remark about Abbott's grievance filed to complain about the transport officer's failure to wait for him to groom himself before the medical transport left. Dr. Garrigan's allegedly adverse action was so insignificant that it "cannot reasonably be expected to deter protected speech." *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003).

Finally, the court notes that there appear to be statute of limitations issues, and possibly res judicata and collateral estoppel issues, for some or all of Abbott's claims. The statute of limitations concerns exist because the vast majority of the events and omissions alleged happened more than two years before the complaint was filed. There may be res judicata and collateral estoppel issues because this action appears to have some connection to another action Abbott filed, *Abbott v. Tootell*, 11-cv-183 LHK. If these or other procedural issues support dismissal or summary judgment, the court prefers (but does not require) that defendants to file a dispositive motion based on procedural problems before filing a motion for summary judgment addressing the merits of the claims.

**CONCLUSION**

1. Liberally construed, the complaint states cognizable § 1983 claims against Dr. Garrigan, Dr. Leighton and Dr. Tootell for violations of plaintiff's rights under the Eighth Amendment, and against Dr. Leighton and Dr. Tootell for retaliation. All other claims and defendants are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, and a copy of the complaint, and a copy of this order upon Dr. E. Tootell, Dr. S. Garrigan, and Dr. D. Leighton, all of whom apparently are on the medical staff at San Quentin State Prison.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **March 2, 2018**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due. If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **March 30, 2018**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment. Plaintiff is cautioned that the text of any opposition brief may not exceed 25 pages in length, and not more than 28 lines per page of text.

    c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **April 13, 2018**.

4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your

complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the plaintiff's case will be dismissed and there will be no trial.

5. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

**IT IS SO ORDERED**.

Dated: December 18, 2017

_____
SUSAN ILLSTON
United States District Judge

7